IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF COMMISSIONERS OF JOHNSON COUNTY, KANSAS; CALVIN HAYDEN, Sheriff, in his official and individual capacities; and DOES 1-10, in their individual capacities, <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff, Human Rights Defense Center ("HRDC" or "Plaintiff"), brings this action to enjoin Johnson County, Kansas, Sheriff Calvin Hayden, and their employees from unconstitutionally censoring HRDC's correspondence to incarcerated persons, and for damages arising from such censorship.

HRDC, a not-for-profit charitable organization, sends books, magazines, and other correspondence to prisoners and detainees across the United States. These materials educate incarcerated persons about their legal and civil rights and their options for accessing education while incarcerated. In recent months, these materials have also provided incarcerated persons critical, time-sensitive information related to the global COVID-19 pandemic, including, among other things, how it is affecting jail populations, the symptoms of the disease, and steps incarcerated persons can take to avoid contracting and spreading the virus. In communicating with such persons, HRDC engages in core protected speech and expressive conduct on matters of public

1

concern, which are entitled to the highest protection afforded by the First Amendment of the U.S. Constitution.

Yet since July 2020, and on an ongoing basis, staff at the New Century Adult Detention Center (the "Jail") in Johnson County, Kansas have refused to deliver dozens of HRDC's mailings to incarcerated persons, directly violating HRDC's First Amendment right to freedom of speech. Jail personnel have either failed to notify HRDC when it censored these mailings, or simply returned the mailings to HRDC's office with no indication as to why they were rejected – violating HRDC's Fourteenth Amendment rights to notice and an opportunity to challenge censorship.

Although the Jail has an official mail policy in place, its correctional officers arbitrarily enforce that policy. Accordingly, through this lawsuit, HRDC respectfully requests that the Court order the Jail and its employees to cease and desist from continuing their ongoing violation, under color of State law, of HRDC's rights (and those of its would-be readers) guaranteed by the First Amendment to the Constitution of the United States, and to award HRDC damages for the injuries it has sustained as a result of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

1.  This action is brought pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343, as it seeks redress for civil rights violations under 42 U.S.C. § 1983.

2.  Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides within this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

3.  HRDC's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities

secured to Plaintiff by the First and Fourteenth Amendments of the U.S. Constitution and the laws of the United States.

4. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as claims seeking nominal and compensatory damages against all Defendants.

5. HRDC's request for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

**PARTIES**

6. HRDC is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Lake Worth, Florida.

7. Defendant Board of Commissioners of Johnson County ("Johnson County") is the governing body for Johnson County, Kansas, a formally constituted political subdivision of the state of Kansas. Johnson County has delegated its authority for the operation of the Jail to Sheriff Hayden.

8. Defendant Calvin Hayden ("Hayden") is the Sheriff of Johnson County, Kansas, to whom Johnson County has delegated the operation of the Jail. He has held the position of Johnson County Sheriff since January 2017. Sheriff Hayden is responsible for overseeing the management and operations of the Jail facilities, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Jail who interpret and apply the mail policy to incarcerated persons. As Sheriff, Hayden is a final policymaker for the Jail with respect

all of its operations, including for policies governing incoming mail for incarcerated persons. He is sued in both his official and his individual capacities.

9. The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC. Each of DOES 1 through 10 are or were employed by and are or were agents of the Jail when some or all of the challenged mail policies and practices at the Jail were adopted and/or implemented. Each of DOES 1 through 10 are or were personally involved in the adoption and/or implementation of the Jail's mail policies for incarcerated persons, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the Jail staff who interpret and implement these mail policies. DOES 1 through 10 are sued in their individual and official capacities. HRDC will seek to amend this Complaint when the true names and identities of DOES 1 through 10 have been ascertained.

10. At all times material to this Complaint, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

## FACTUAL ALLEGATIONS

### I.   HRDC's Publications

11. For more than 30 years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

12. To accomplish its mission, HRDC publishes and distributes books, magazines, and other information containing news and analysis about prisons, jails and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions and other matters pertaining to the rights and/or interests of incarcerated individuals.

13. HRDC publishes and distributes an award-winning, 72-page monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights*, which contains news and analysis about prisons, jails, and other detention facilities, prisoners' rights, court opinions, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals.

14. Starting in April 2020, HRDC's *Prison Legal News* magazine has also sought to provide incarcerated persons critical, time-sensitive information related to the global COVID-19 pandemic, including how it is affecting jail populations, the symptoms of the disease, and steps incarcerated persons can take to avoid contracting and spreading the virus.

15. HRDC also publishes a second 56-page monthly magazine, *Criminal Legal News*. This magazine focuses on review and analysis of individual rights, court rulings, and news concerning criminal justice-related issues.

16. HRDC has thousands of subscribers to its monthly magazines in the United States and abroad, including incarcerated persons, attorneys, judges, journalists, libraries, and members of the public.  Since its creation in 1990, HRDC has sent its publications to prisoners and law librarians in more than 3,000 correctional facilities across the United States, including death row units and institutions within the Federal Bureau of Prisons, such as the federal Administrative Maximum Facility ("ADX" or "Supermax") in Florence, Colorado—the most secure prison in the United States. *Prison Legal News* is distributed to prisons and jails within the correctional systems of all 50 states, including to dozens of incarcerated persons housed in facilities in the State of Kansas.

17. Additionally, HRDC publishes and/or distributes dozens of different softcover books about the criminal justice system, legal reference books, and self-help books of interest to

prisoners. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics. Pertinent to this case, HRDC publishes and/or distributes the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Guerilla Handbook*"), which provides prisoners information on enrolling at accredited higher educational, vocational and training schools, and *Protecting Your Health and Safety* ("*PYHS*"), which describes the rights, protections and legal remedies available to prisoners concerning their incarceration.

18. In addition to monthly journal issues and books, HRDC also sends prisoners: (a) informational brochure packets – the packet contains a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page); (b) copies of judicial opinions of import to prisoners; and (c) letters which provide other pertinent information to incarcerated people, including follow up letters to confirm that HRDC's mail was received.

19. HRDC has been attempting to send these important publications to persons incarcerated at the Jail, but Defendants maintain mail policies or practices that unconstitutionally prevent HRDC from doing so.

II. **Defendants' Mail Policies and Practices**

20. According to the Johnson County Sheriff's Office Detention Bureau Mail Rules (the "Mail Policy"):

> Incoming **Non-Privileged** mail may be accepted in postcard or letter form. All Non-Privileged Mail in letter form will be opened and inspected for contraband by authorized personnel. Non-Privileged Mail will also be inspected for prohibited content and for any restricted material.

- Letters/Postcards will be addressed with the return address clearly readable or they will not be accepted.

- Letters/Postcards will have stamps removed and discarded prior to delivery to the inmate.
- No plastic/wrappings, labels or stickers on letters/postcards.
- No letters/postcards with watermarks, stains, biohazards (including lipsticks or perfumes) will be accepted.
- No letters/postcards depicting sexually explicit material, weapons, alcohol, or gang reference will be accepted.

Letters/postcards will be rejected, returned to sender or seized as evidence only if there is credible evidence showing the letter contains one or more of the following:

- Plans for sending contraband into or out of the Detention Center.
- Plans for criminal activity.
- Instructions for the manufacturing of weapons, alcoholic beverages, drugs, and drug paraphernalia.
- Threatened blackmail or extortion.
- Plans for escape or unauthorized entry.
- Plans for activities in violation of Detention Center rules.
- Sexually explicit, nudity, weapons, alcohol, or gang related material.
- Information which if communicated would create a serious danger of violence, physical harm to a human being, or the order and security of the detention centers.

Should correspondence be totally or partially rejected, a written notice stating the reason(s) for rejection shall be provided to the inmate.

Johnson County Sheriff's Office Detention Bureau Mail Rules, *available at* http://www.jocosheriff.org/detention/mail-rules (last visited September 10, 2020).

21. In addition, the Jail's policy contains the following provisions regarding publications:

2. Newspapers or Magazines
   - Prior approval from the Classification supervisor or their designee is necessary for Newspapers or Magazines.
   - Due to contraband concerns, publication inserts shall be removed prior to delivery to the inmate.
   - Newspapers and Magazines must be sent from the publisher and can be denied if found to threaten the safety or security of the facility.

      3. Packages are still not accepted without prior approval. The definition of a package is any item requiring postage more than the cost of a first class stamp.

### III. Defendants' Censorship of HRDC's Mail

22. Beginning in July 2020, the Jail began returning many of HRDC's mailings to incarcerated persons there.

23. Specifically, Defendants have censored issues of *Prison Legal News* and *Criminal Legal News*, the *Prisoner's Guerilla Handbook*, *PYHS*, informational brochure packets, and court opinion letters sent by HRDC to incarcerated persons held in the Jail. Defendants refused to deliver said items to the incarcerated persons and, in some instances, returned items to Plaintiff's office via the "Return to Sender" service of the United States Postal Service. Defendants' censorship of these materials is ongoing.

24. Altogether, since July 2020 Plaintiff can identify at least fifty-eight (58) items that were rejected by Defendants, including ten (10) copies of *Prison Legal News*, ten (10) copies of *Criminal Legal News*, ten (10) copies of *PYHS*, ten (10) copies of the *Prisoners' Guerilla Handbook*, ten (10) informational brochure packs, one (1) court ruling, and seven (7) follow up letters.

25. The rejected items of mail described in the previous paragraph were returned to HRDC's offices marked with one or more of the following notations: "Refused", "Not Approved", "Return to Sender Unauthorized Package Reason: _____", "Return to Sender Unauthorized Package Reason: Not Approved", "Return to Sender Unauthorized Package Does Not Comply With Facility Mail Policy", and "No Labels, Stickers, Etc."

26. On information and belief, in addition to the items the Defendants have censored and returned to HRDC through the mail, Defendants are also censoring other items mailed by

8

HRDC to persons incarcerated in the Jail, but without notifying HRDC that Defendants have rejected the materials or the reasons therefor.

27. Such restrictions on written speech sent to persons incarcerated at the Jail are not rationally related to any legitimate penological interest and violate HRDC's First Amendment right to communicate, through the mail, with incarcerated persons.

28. Defendants' policies, practices, and customs are unconstitutional, both facially and as applied to HRDC.

29. Further, Defendants' censorship policies, practices, and customs have a chilling effect on HRDC's future speech and expression directed toward persons incarcerated at the Jail.

30. Plaintiff intends to continue sending mail and publications to those incarcerated at the Jail. Plaintiff seeks the protection of this Court to ensure that Defendants cease their unlawful conduct, and either deliver HRDC's written speech or satisfy due process by providing HRDC with the basis for any censorship so that HRDC may challenge the censorship.

## IV. **Defendants' Failure to Provide Due Process Notice and an Opportunity to Appeal**

31. To date, Defendants have failed to provide HRDC with any notice of the reason for the rejection of its publications.

32. Further, Defendants have failed to provide HRDC with an opportunity to appeal the censorship of its mail.

## V. **Defendants' Unconstitutional Mail Policies and Practices Are Causing HRDC Ongoing and Irreparable Harm.**

33. Due to Defendants' actions described above, HRDC has suffered damages, and will continue to suffer damages, including but not limited to: deprivation of its constitutional rights; frustration of its abilities to disseminate its political message, to recruit new subscribers and

supporters, and to advance its mission as a not-for-profit organization; significant diversion of its resources, including staff time; loss of potential subscribers and customers; damage to its reputation; and significant printing, handling, and mailing costs.

34. Defendants' actions and omissions were and are all committed under color of law and with reckless indifference to HRDC's rights.

35. Defendants and their agents are responsible for—or personally participated in—creating and implementing these unconstitutional policies, practices, and customs, and/or ratifying or adopting them. Further, Defendant Hayden is responsible for training and supervising employees whose conduct has injured and continues to injure HRDC.

36. Defendants' unconstitutional policies, practices, and customs are ongoing, and continue to violate HRDC's constitutional rights—causing irreparable harm. Defendants' unconstitutional policies, practices, and customs will continue unless enjoined. As such, HRDC has no adequate remedy at law.

37. Defendant Hayden's actions – including, but not limited to, the implementation and arbitrary enforcement of an official mail policy – are in violation of clearly established law in this jurisdiction that makes it unlawful for governmental officials to deny persons the right to communicate, via the U.S. Mail, with incarcerated prisoners, absent a legitimate penological justification and without providing notice and an opportunity to the mail sender to challenge any such denial.

38. In addition to damages, HRDC is entitled to injunctive relief prohibiting Defendants from unconstitutionally censoring and refusing to deliver HRDC's mailings and depriving HRDC of due process of law.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Violation of the First Amendment Right to Free Speech and Communication
### Under 42 U.S.C. § 1983
### (Brought Against All Defendants)

39. HRDC repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

40. The acts described above constitute violations of HRDC's rights under the First Amendment of the U.S. Constitution, as incorporated and applicable to the Defendants under the Fourteenth Amendment.

41. HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals by sending its materials to them via U.S. Mail. Defendants' unconstitutional censorship violates HRDC's clearly established right to communicate with these individuals.

42. There is no legitimate penological interest justifying Defendants' unconstitutional censorship.

43. Moreover, Defendants' apparent requirement that prisoners seek prior approval of published materials before they can be delivered to their intended recipients serves as a prior restraint on speech, abridging HRDC's First Amendment rights.

44. Defendants' conduct is objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

45. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies and practices; and those policies and practices were the moving force behind the violations.

46. The acts described above have caused HRDC to suffer damages, and if not enjoined, will continue to cause HRDC to suffer damages.

47. HRDC seeks declaratory and injunctive relief against all Defendants, and nominal and compensatory damages against the individual Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment Right to Notice and Due Process**
**Under 42 U.S.C. § 1983**
**(Brought Against All Defendants)**

48. HRDC repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

49. The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with persons incarcerated in the Jail, and the rights of persons incarcerated in the Jail, under the Fourteenth Amendment of the U.S. Constitution.

50. HRDC has a clearly established right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent Plaintiff's mail from reaching incarcerated persons held in the Jail.

51. Defendants' policy and practice of censoring HRDC's mail fails to provide Plaintiff with individualized notice of the censorship or an opportunity to be heard. Defendants did not provide constitutionally adequate notice of the basis for censorship of HRDC's magazines nor did Defendants provide HRDC an opportunity to appeal the censorship decision with a party not involved in that original decision. Thus, Defendants violated HRDC's clearly established right to due process.

52. Defendants' conduct is objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

53. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies and practices; and those policies and practices were the moving force behind the violations.

54. The acts described above have caused HRDC to suffer damages, and if not enjoined, will continue to cause HRDC to suffer damages.

55. HRDC seeks declaratory and injunctive relief against all Defendants, and nominal and compensatory damages against the individual Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

1. A declaration that Defendants' policies and practices violate the First and Fourteenth Amendments of the U.S. Constitution, facially and as applied;

2. Preliminary and permanent injunctions preventing Defendants from continuing to violate the First and Fourteenth Amendments of the U.S. Constitution, and providing other equitable relief;

3. Nominal damages for each violation of HRDC's rights;

4. Compensatory damages in an amount to be proved at trial;

5. Punitive damages against the Individual Defendants in their individual capacities, in an amount to be proved at trial;

6. An award of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and other applicable law; and

7.      Such further and additional relief as this Court may deem just and equitable.

## JURY DEMAND

Plaintiff Human Rights Defense Center hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: September 11, 2020                         Respectfully submitted,

 s/ *Maxwell E. Kautsch*

Maxwell E. Kautsch, Kansas Bar No. 21255
Kautsch Law, LLC
810 Pennsylvania St.
Suite 207
Lawrence, KS 66044
Telephone: (785) 840-0077
Fax: (785) 842-3039
maxk@kautschlaw.com

Bruce E.H. Johnson, WA Bar No. 7667*
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8069
brucejohnson@dwt.com

Daniel Marshall, Fla. Bar No. 617210*
Eric Taylor, Fla. Bar No. 1020671*
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Fax: (561) 828-8166
dmarshall@hrdc-law.org
etaylor@humanrightsdefensecenter.org

*Attorneys for Plaintiff Human Rights Defense Center*

 **Pro hac vice* applications to be filed.*