IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:20-cv-02447-HLT-KGG |
| v. | ) | |
| | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| JOHNSON COUNTY, KANSAS; | ) | |
| CALVIN HAYDEN, Sheriff, in his official | ) | |
| and individual capacities; and DOES 1-10, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

In opposing Plaintiff's Motion for Preliminary Injunction, Defendants assert that they rejected Human Rights Defense Center ("HRDC") materials addressed to inmates either because they had mailing labels or because they were not pre-approved by staff at the New Century Adult Detention Facility (the "Jail"). Defendants justify these rules in two ways: to prevent contraband from entering the Jail, and to limit the amount of the Jail's resources used in mail processing. However, these justifications do not rise to the levels of "legitimate penological interests" when applied to mail sent by a publisher such as the HRDC. Any alleged security or resource management issues attributable to HRDC's materials can be addressed through alternative measures that do not infringe on publishers' constitutional rights.

Additionally, to justify their failure to send due process notice when it rejected HRDC's mail, Defendants claim that HRDC was entitled to less due process than has been ordered in other cases, an argument that is not consistent with applicable precedent. Finally, Defendants' claim

1

that they did provide notice of the reason for rejection is belied by the evidence in the case.

## ANALYSIS

### I. Standing

As an initial matter, Defendants' argue that HRDC does not have standing to assert the rights of others, such as prisoners in the Jail. ECF Dkt. 10, Johnson County Defendants' Memorandum Response to Plaintiff's Motion for Preliminary Injunction ("Response"), pp. 2-3. While true, that is not what HRDC is requesting. The Complaint in this case and Plaintiff's Motion for Preliminary Injunction are clear in asserting violations of HRDC's rights to free speech and due process, not the rights of anyone else. HRDC obviously has standing to litigate violations of its own constitutional rights by the Defendants. *See, e.g., Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012). The injunctive relief requested by HRDC is designed to stop the violations of its rights. There is no reason to invoke standing to limit the relief to which HRDC is entitled.

### II. HRDC is Likely to Succeed in this Case Because Defendants Have Violated its First Amendment Rights.[1]

*Turner v. Safley*, 482 U.S. 78, (1987) lays out the framework to determine whether a jail or prison policy violates constitutional rights. Defendants claim that the Jail rejected HRDC's materials because they contained mailing labels, and/or because they were not pre-approved by

---

[1] Plaintiff will not address the other preliminary injunction factors in this reply, as Defendants' analysis of those factors largely stems from its erroneous conclusion that HRDC is not likely to succeed. "[W]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (upon showing a likelihood of success on the merits in the First Amendment context, the other factors are satisfied; irreparable injury is deprivation of First Amendment rights; injury outweighs defendant's inability to enforce unconstitutional statute; public interest in free expression is protected).

Jail staff.  ECF Dkt, 11, Declaration of Shane Thomas ("Thomas Decl."), ¶ 39.  However, neither of these policies withstands scrutiny under the *Turner* analysis.

### A. Defendants' Mail Policies are not Rationally Related to a Legitimate Penological Interest when Applied to HRDC[2]

1. Prohibition on Mailing Labels

Defendants rejected numerous magazines and letters because they were sent with mailing labels.  Thomas Decl. ¶ 39.  The Jail instituted its mailing label ban because contraband can be concealed beneath them.  Thomas Decl. ¶ 24.  However, such a rationale is not legitimate when applied to a publisher or distributor of publications, such as HRDC.[3]  As the United States Supreme Court has noted, "there is relatively little risk that material received directly from a publisher or book club would contain contraband."  *See Bell v. Wolfish*, 441 U.S. 520, 549 (1979); *see also Sw. Va. Reg'l Jail Auth.*, 396 F. Supp. 3d 607, 620 (W.D. Va. 2019) ("Books sent directly from publishers pose little risk of drug smuggling").  Thus, there is no legitimate reason to prevent HRDC's mail based on its labels.

Moreover, even if HRDC's labels were a problem, Jail staff could simply remove them.  It strains credulity to believe that it would be a significant imposition on staff, who are already cutting the stamps off of letters, to simply remove the labels as well.  And, as discussed more fully below, efficiency, in and of itself, is not a sufficient justification for curtailing constitutional rights.

---

[2] Defendants take issue with whether HRDC's claims of unconstitutionality are facial or as-applied.  Response, pp. 3-4.  However, that is irrelevant for the purposes of this motion.  All that must be shown is that HRDC's constitutional rights are likely being violated.

[3] Defendants try to make hay from the fact that they did not know HRDC is a publisher.  Response, p. 10.  But the magazines and books arriving at the Jail were clearly publications, and a quick Google search would reveal that HRDC was the publisher.  *See* https://www.humanrightsdefensecenter.org/ (last visited November 24, 2020); https://www.prisonlegalnews.org/ (last visited November 24, 2020).

2. Pre-approval policy

Defendants' policy requiring pre-approval of books from HRDC is an unconstitutional prior restraint on HRDC's First Amendment rights. By requiring pre-approval, Defendants' mail policy fails to consider the scope of HRDC's First Amendment right to send a book to a specific prisoner, either on its own accord or on behalf of someone else. HRDC should not be required to satisfy this administrative hurdle before exercising its First Amendment rights. Such a restriction to free speech is a classic example of a prior restraint akin to the requirement of obtaining a license.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). *See also American Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (prior restraints bear a heavy presumption of unconstitutionality). While prior restraints are tolerated in certain circumstances where the content of the speech is an issue, First Amendment jurisprudence has long recognized that even there, prior restraints on the delivery of the mail have no place in American government. In *Lamont v. Postmaster General*, 381 U.S. 301 (1965), the Supreme Court found that "the use of the mails is almost as much a part of free speech as the right to use our tongues," *Id.* at 305 and held that the prior restraint at issue was "at war with the 'uninhibited, robust, and wide-open' debate and discussion that are contemplated by the First Amendment." *Id*. at 307 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))." Even with regard to the First Amendment right of a prisoner to receive information, courts have found that a pre-approval option is "not a sufficient alternative" to receiving mail under *Turner*. *See, e.g.*, *Cox v. Denning*, 2014 WL 4843951, at *21 (D. Kan. Sept. 29, 2014), *aff'd*, 652 F. App'x 687 (10th Cir. 2016). Indeed, other courts have invalidated pre-approval policies as well. *See,*

*e.g., Leachman v. Thomas*, 2000 U.S. App. LEXIS 39809 (5th Cir. 2000) (unpublished); *Human Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 396 F.Supp.3d 607, 621 (W.D. Va. 2019).

Just like the mailing label rule, Defendants' pre-approval policy is unconnected to any legitimate penological interest. Defendants claim that "requiring inmates to get preapproval for packages and the contents gives the staff the opportunity to evaluate and address problematic items before they arrive at the facility and ensures it does not contain unsolicited materials the inmate has no interest in, a significant waste of resources." Response, p. 9.[4] However, there is no evidence that doing so actually helps the Jail; nothing prevents staff from verifying and searching items when they arrive. The pre-approval policy simply changes the timing of when the evaluation occurs. In fact, pre-approval uses more resources because Jail staff must look into items that may never actually come to the Jail, if, for example, a prisoner changes his mind.

The concerns of counterfeiting are similarly unfounded. Even pre-approved packages are inspected before being delivered to prisoners. Thomas Decl. ¶ 31. Evaluation and verification can just as easily be done when the item is at the Jail. Even more accurately, in fact, when the item is in hand. In the end, the pre-approval policy does nothing that a simple inspection of items at the Jail could not do.

### B. There are no Reasonable Alternatives for HRDC to Communicate its Speech.

Defendants claim that HRDC's request for a preliminary injunction is moot because inmates have received some "mail items" from HRDC since the lawsuit was filed. Response, p. 2. Defendants further allege that those items are reaching inmates because HRDC "has since

---

[4] Defendants cite an example of a prisoner who "declined" *Prison Legal News*. Response, p. 9. However, their evidence does not support such a claim. The prisoner in question did not respond to the Jail's inquiry; he did not affirmatively decline the magazine. Thomas Decl., ¶ 38.

stopped sending mail in violation" of Defendants' mail regulations, seeming to suggest that reasonable alternatives are available to HRDC. *Id*.

However, the "mail items" reaching inmates are limited to magazines to which mailing labels are not affixed. Exhibit A, Supplemental Declaration of Paul Wright, ¶ 10. Those magazines represent only a small portion of the mail HRDC has attempted to deliver. Defendants have censored other items, such as promotional materials, letters, and books. HRDC intends to resume sending such other items to prisoners at the Jail, even if it has not done so since the lawsuit was filed due to the obvious futility of such action. *Id.*, ¶ 11. Allowing inmates to receive only magazines without mailing labels from HRDC, and nothing else, is not a reasonable alternative, and does not moot the issues raised in HRDC's Motion for Preliminary Injunction.

Defendants' argument is akin to faulting HRDC for not continuing to knock after having the door slammed in its face. Such chilling of future speech has been repeatedly found unconstitutional by courts across the country. *See, e.g., Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006). Only the preliminary injunction sought herein will redress the harm to HRDC and allow it to exercise its First Amendment rights in a timely manner.

**C.  The Jail's Operations Would Not be Significantly Impacted by Allowing HRDC's Materials.**

Defendants' complaint that somehow allowing mail with labels from publishers and packages without pre-approval will be a tremendous burden on the Jail are incredible and unfounded. Allowing mail from publishers creates no security risk. Even if the Jail did not want labels going to the prisoners, staff who are already cutting off stamps would not spend much time in removing mailing labels as well. And as outlined above, at best pre-approval merely changes the timing of when staff must perform evaluations, and at worst actually uses more resources by

forcing staff to look into items that will never arrive. Cutting off mailing labels and conducting checks of packages when they reach the Jail does not require an overhaul of the Jail's mail system.

Additionally, even if there were some small savings of time by rejecting HRDC's mail, that does not justify the violation of HRDC's rights. Efficiency, while legitimate, is not the type of penological interest that by itself warrants the curtailment of speech. *Ariz. Free Enter. Club's Freedom PAC v. Bennett*, 564 U.S. 721, 724 (2011) ("[T]he First Amendment does not permit the State to sacrifice speech for efficiency."); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) ("[F]inancial constraints may not be used to justify the creation or perpetration of Constitutional violations."); *Roe v. Crawford*, 514 F.3d 789, 798 (8th Cir. 2008). To take the Defendant's argument to an extreme, it would obviously conserve resources and allow Jail staff to focus on other things if they eliminated mail entirely. However, if efficiency was the only justification such a policy would clearly be unconstitutional. *Ariz. Free Enter.*, 564 U.S. at 724; *Thornburgh v. Abbott*, 490 U.S. 401 (1989). It's undoubtedly easier for the Jail to ignore constitutional rights, but that doesn't make it legal.

**D. There is an Easy Alternative for the Jail to Accommodate HRDC's Constitutional Rights**

The analysis of the first three *Turner* factors suggests the easy alternative that the Jail could adopt that protects HRDC's Constitutional rights while at the same time having minimal impact on Jail operations: the Jail can accept mail from HRDC, removing the mailing labels if it desires, and inspecting packages when they arrive at the Jail rather than requiring pre-approval. Indeed, such a solution is the policy of numerous jails and prisons across the country.

For all the reasons outlined above, the *Turner* factors favor HRDC. Therefore, Plaintiff is likely to succeed on the merits of its claims.

### III. Defendants Failed to Provide HRDC with Notice of Why its Mail was Rejected or a Way to Appeal the Rejection.

An opportunity to be heard is a crucial, constitutionally-mandated chance to correct errors and challenge censorship decisions.  The rationale behind requiring due process notice and appeal also supports requiring it here.  Giving a sender notice and allowing them to appeal would put the Jail on notice and give it an opportunity not just to determine whether a specific item is acceptable under its policy, but also to evaluate whether the policy is itself unconstitutional.  Without due process, senders are forced to file time-consuming, expensive lawsuits in order to vindicate their constitutional rights.  The Defendants' claim that senders can challenge a rejection decision rings hollow when senders are not given notice of how to do so, or even that it is a possibility.  Further, despite Defendants' protestations to the contrary, providing notice to a sender of mail would "pose a minimal burden" on Jail staff.  *Montcalm Publ. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996).

Defendants rely heavily on a district court case from another circuit to argue that HRDC was not entitled to the full due process requirements of *Procunier v. Martinez*, 416 U.S. 396 (1974), while unconvincingly attempting to distinguish the Tenth Circuit case that is on point.[5] This Court should follow *Jacklovich v. Simmons*, 392 F.3d 420, 431 (10th Cir. 2004), and find that Defendants violated HRDC's due process rights for failing to provide notice and a means to appeal the rejection decision.

Moreover, even the cases cited by Defendants recognize that HRDC was entitled *at least* to notice that its mail was rejected *and the reason for rejection*.  *See Baxter*, 360 F.Supp.3d at 883.  Here, there is no question that Defendants have violated HRDC's due process rights.  It is

---

[5] Defendants also fail to note that the case they rely upon, *Human Rights Defense Center v. Baxter County, Arkansas*, 360 F.Supp.3d 879 (W.D. Ark. 2019), is currently on appeal in the Eighth Circuit.

undisputed that HRDC's materials were returned with the notations "Refused", "Not Approved", "Return to Sender Unauthorized Package Reason: _____", "Return to Sender Unauthorized Package Reason: Not Approved", "Return to Sender Unauthorized Package Does Not Comply With Facility Mail Policy", and "No Labels, Stickers, Etc.".  Wright Decl., ¶ 20.  Defendants fault HRDC for not contacting the Jail when its mail was censored, but the Jail provided no information whatsoever about how to appeal, or even that an appeal was possible.  Wright Decl., ¶ 34.  A note to call a certain number "[i]f you have any questions concerning the mail procedures" is hardly notice of how to submit an appeal.

Even if HRDC had a method to have the Jail's decision reviewed, it could not have asserted an appeal in any meaningful way because it did not know why its mail was rejected.  The statements "Refused", "Not Approved", "Return to Sender Unauthorized Package Reason: _____", "Return to Sender Unauthorized Package Reason: Not Approved", and "Return to Sender Unauthorized Package Does Not Comply With Facility Mail Policy" are both self-evident and unenlightening.  Marking a returned item "Not Approved" does not inform a sender that the Jail has a pre-approval policy; the item could just have easily be disapproved for any number of reasons.  Except for "No Labels, Stickers, Etc.", none of the notations told HRDC why the item was rejected, such that HRDC could attempt to address the problem.  Thus, Defendants violated HRDC's right to due process, both by failing to inform HRDC of the reason for rejection in most instances, and by failing to provide notice of and a procedure to challenge the rejections decisions.

## IV. The Bond Requirement Should be Waived.

Defendants cite *Front Range Equine Rescue v. Vilsack*, 844 F.3d 1230, 1233 (10th Cir. 2017) for their contention that the Court must impose a bond if it issues a preliminary injunction.

However, that case did not decide whether a bond is mandatory. Instead, it ruled on whether a trial court could refuse to award damages on an already posted bond. *Id*. Elsewhere, the Tenth Circuit has indicated that it is permissible for a trial court to waive the bond requirement in the first instance. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987).

Even if this Court decides it must order a bond in some amount, it is within the Court's discretion to order only a nominal bond. That is especially appropriate here, where Plaintiff is a small non-profit organization with limited resources. Wright Decl. ¶ 37. Defendants offer no evidence to rebut HRDC's small size or lack of resources, but instead claim that HRDC must be able to pay a bond because of its litigation history.[6] However, such history sheds no light on HRDC's ability to pay a bond. Under these circumstances, the Court should order no more than a nominal bond. *Ctr. For Food Safety v. Vilsack*, 753 F. Supp. 2d 1051, 1061–62 (N.D. Cal. 2010) (waiving bond requirement for small non-profit organization suing government entity because bond would effectively deny access to judicial review), *vacated and remanded on other grounds by Ctr. For Food Safety v. Vilsack*, 636 F.3d 1166 (9th Cir. 2011).

Additionally, Defendants improperly attempt to include future attorneys' fees in its request for this Court to set a bond, even though it is well settled that for purposes of Fed.R.Civ.P. 65(c), "costs and damages" do not include attorneys' fees. *Fireman's Fund Ins. Co. v. S. E. K. Const. Co.*, 436 F.2d 1345, 1352 (10th Cir. 1971) (under Rule 65, attorneys' fees are not recoverable); *Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988), *abrogated on other*

---

[6] In that effort, Defendants attempt to exaggerate HRDC's capabilities by referring to the number of "filings" in HRDC's cases, rather than the number of cases themselves, and including in their number many filings that are years, if not decades old. Response, p. 20, footnote 9.

grounds, *Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991); *Minnesota Power & Light Co. v. Hockett*, 14 Fed. Appx. 703, 706 (7th Cir. 2001). This Court should either waive the bond requirement or set only a nominal bond.

## CONCLUSION

For the reasons set forth above and in Plaintiff's Motion for Preliminary Injunction, the Court should issue a preliminary injunction enjoining Defendants from continuing to violate Plaintiff's constitutionally protected rights by arbitrarily rejecting its mailed communications to prisoners incarcerated at the Jail, and without providing HRDC due process, and the Court should waive the bond requirement therefor.

Dated: November 24, 2020

Respectfully submitted,

/s/ *Maxwell E. Kautsch*

Maxwell E. Kautsch, Kansas Bar No. 21255
810 Pennsylvania St.
Suite 207
Lawrence, KS 66044
Telephone: (785) 840-0077
Fax: (785) 842-3039
maxk@kautschlaw.com

Bruce E.H. Johnson, WA Bar No. 7667*
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8069
brucejohnson@dwt.com

Daniel Marshall, Fla. Bar No. 617210*
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Fax: (561) 828-8166
dmarshall@hrdc-law.org

*Attorneys for Plaintiff Human Rights Defense Center*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2020, I electronically filed the above and foregoing Reply in Support of Motion for Preliminary Injunction with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ *Maxwell E. Kautsch*

Maxwell E. Kautsch